UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-35-GWU

BEVERLY A. HALBERT, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

       Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

       Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-35 Halbert

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In

such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Beverly A. Halbert, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of back pain, borderline intellectual functioning due to marginal literacy and math skills, a dysthymic disorder, and a panic disorder with agoraphobic features by self-report. (Tr. 19). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Halbert retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 24-7). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 37, with ten grades of formal schooling plus a GED, but a borderline IQ with marginal literacy and reading and spelling and capable of only simple math, could perform any jobs if she were capable of "medium" level exertion, and also had the following non-exertional limitations; namely, (1) she must be

7

permitted to wear eyeglasses as desired and to wear protective ear devices or hearing aids as appropriate; (2) she had a poor (defined as "seriously limited but not precluded") ability to understand, remember, and carry out complex job instructions; and (3) she had a fair (defined as "limited but satisfactory") ability to relate to coworkers, deal with the public, interact with supervisors, deal with work stresses, and understand, remember, and carry out detailed but not complex job instructions. (Tr. 312-13). In all other areas of occupational, performance, and personal/social adjustments, her ability was "more than satisfactory." The ALJ also specified a verbal IQ score of 75, a performance IQ of 76, and a full scale IQ of 74. (Tr. 312). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 313-14).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence. There is an additional issue in that Mrs. Halbert's Date Last Insured (DLI) was June 30, 2003 (Tr. 17), meaning that she was required to show disability before this date in order to be entitled to DIB.

Mrs. Halbert alleged disability due to back problems, hepatitis C, and being "manic depressive" and "bipolar." (Tr. 76). Although she alleged having back pain and some hearing problems, as well as swollen wrists which she related to carpal

tunnel problems (Tr. 299, 301) and described hepatitis as well as gallbladder surgery (Tr. 310), no treating or examining physician placed any restrictions due to physical problems. Her treating family physician, Dr. Alan Hyden, stated that he had treated Mrs. Halbert since 1988 and she had diagnoses of anxiety, panic attacks, back pain, and knee pain; however, her response to medication was "good" and her prognosis was "good." (Tr. 140). The plaintiff does not challenge the physical functional restrictions on appeal.

Mrs. Halbert does argue on appeal that the ALJ did not include all of the mental restrictions found by state agency reviewing psychologists, Larry Freudenberger and Lea Perritt, who reviewed a portion of the record and completed mental residual functional capacity forms on April 21, 2003 and October 1, 2003, respectively (Tr. 168-71, 253-5).

The ALJ stated in his decision that he accepted the opinions of both the state agency medical experts, as well as two reports by Dr. William Rigby, a psychologist, who examined the plaintiff on March 5, 2003 and on June 5, 2005. (Tr. 26). Dr. Rigby had initially diagnosed the plaintiff with dysthymia and an anxiety disorder and assigned a current Global Assessment of Functioning (GAF) score of 66. (Tr. 155-6). A GAF score in this range reflects only mild symptoms. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. Dr. Rigby concluded that Mrs. Halbert would have a good ability in most areas, except for a "fair" ability

to adapt or respond to the stress and pressures found in a day-to-day work setting (Tr. 156).  The term "fair" was undefined.

Dr. Freudenberger subsequently completed his mental residual functional capacity assessment, in which he indicated that the plaintiff would have a "moderately limited" ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting.  (Tr. 168-9).  Dr. Freudenberger based his opinion on the plaintiff's allegations, which he found partially credible, and on an intake note at the Mountain Comprehensive Care Center (CCC) which indicated an impression of a depressive disorder, and a GAF of 70.  (Tr. 120, 170).  In addition, he considered office notes from Dr. Hyden describing a depressed mood and anxiety, and the report of Dr. Rigby.  (Tr. 170-1).

Subsequently, the plaintiff appears to have been given a diagnosis of a moderate major depressive disorder at the CCC with a current GAF of 65 and a highest GAF in the past year of 80.  (Tr. 201).  This new evidence was apparently considered by Dr. Perritt, but she indicated that it did not indicate a significant change in the plaintiff's condition, and listed the same restrictions as Dr. Freudenberger.  (Tr. 253-5).

Further treatment from the CCC included notations that the plaintiff was terminated for lack of contact, although she returned to treatment, that she missed several appointments, and that she was non-compliant with medications.  (Tr. 261-77).  There is no indication of specific restrictions, however.

Dr. Rigby conducted his second examination of the plaintiff and reviewed the most recent CCC office notes.  (Tr. 280).  On this occasion, he administered IQ testing and achievement testing, which was considered valid and produced scores indicating that the plaintiff functioned in the borderline range of intelligence and was functionally non-literate.  (Tr. 283-5).  Although Mrs. Halbert asserted that she had been psychiatrically hospitalized, Dr. Rigby noted that she had really been in a "stabilization unit" associated with a mental health clinic.  (Tr. 281).  Dr. Rigby described Mrs. Halbert's mood as mildly dysphoric and her affect was "restricted" and "depressive," but her social interactions were unremarkable. (Tr. 281, 283).  He diagnosed dysthymia, a panic disorder with agoraphobia "by claimant's allegation," borderline intellectual functioning, and disorders of reading, written expression, and mathematics.  (Tr. 285).  In the narrative portion of his report, Dr. Rigby reported that the plaintiff had a "fair" ability to relate to others, including fellow workers and supervisors, and to tolerate the stress and pressures of work activity.  (Id.).  He also attached a mental medical assessment of ability to do work-related activities, which the ALJ followed in the hypothetical question, supra.

07-35 Halbert

The plaintiff argues on appeal that there are significant differences between the limitations given in the hypothetical questions and those given by the state agency experts. Specifically, the plaintiff argues that a moderate limitation in her ability to maintain attention and concentration for extended periods was not consistent with the "more than satisfactory" finding by Dr. Rigby in this area. (Tr. 287). Additionally, the hypothetical question did not contain a moderate limitation in the plaintiff's ability to respond appropriately to changes in the work setting.

Clearly, while there is some degree of inconsistency between the opinions of Dr. Rigby and the state agency reviewers in the area of attention and concentration, which was not addressed by the ALJ, who simply stated that both the state agency experts and Dr. Rigby were entitled to significant weight because they were consistent with the evidence of record (Tr. 26), the error is harmless in view of the fact that the ALJ could reasonably have relied on the most recent opinion of the examining source, Dr. Rigby. Not only is an examining source normally entitled to greater weight than a non-examiner, it also appears that Dr. Rigby reviewed previous records and had a much more up to date picture of the plaintiff's mental status than the state agency sources. The ALJ's decision complies with the requirements of 20 C.F.R Section 404.1527(f)(2)(i) regarding the need to consider findings by state agency medical and psychological consultants, and this is not a case in which the state agency sources were uncontradicted. No useful purpose

07-35  Halbert

would be served by a remand to resolve this small discrepancy under these circumstances.

The decision will be affirmed.

This the 9th day of January, 2008.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**